Frank R. Schirripa
John A. Blyth
HACH ROSE SCHIRRIPA & CHEVERIE LLP
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: (212) 213-8311
Facsimile: (212) 779-0028

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LARENNE METZ,<br><br>                    Plaintiff,<br><br>          v.<br><br>VAL-U AUTO PARTS LLC, JAMES<br>SCHEUERMANN SR., and JAMES<br>SCHEUERMANN JR.<br><br>                    Defendants. | **Civil Action No.: 18-cv-1903**<br><br><br>**COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Larenne Metz, by and through her attorneys, Hach Rose Schirripa & Cheverie, LLP complaining of the Defendants, Val-U Auto Parts LLC, James Scheuermann Sr. and James Scheuermann Jr., collectively ("Defendants"), brings this action for (1) employment discrimination and wrongful termination on the basis of her sex, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.* ("NJLAD"); and (2) employment discrimination and wrongful termination on the basis of her disability, pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA") and the NJLAD. Plaintiff respectfully alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has original federal question jurisdiction under 28 U.S.C. §§ 1331 because this case is brought under the Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e *et seq.* At all times relevant to this action Plaintiff was a resident of the State of New Jersey, Atlantic County.

2.      Venue properly lies in the District of New Jersey pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in that district. Venue is also properly laid in this Court pursuant to 28 U.S.C. § 1391 (b)(3) in that Defendants operate and doe business within the district in which the Court is located, and is subject to this Court's personal jurisdiction.

## PARTIES

3.      Plaintiff Larenne Metz ("Plaintiff" or "Ms. Metz") is a 28-year-old female and former employee of Defendants. During all times hereinafter mentioned, Ms. Metz was and still is a resident of the State of New Jersey, Atlantic County.

4.      Defendant Val-U Auto Parts LLC, during all relevant times hereinafter mentioned, is a New Jersey limited liability company that maintains two National Automotive Parts Association ("NAPA") Auto Parts stores located at 1613 White Horse Pike, Egg Harbor City, Atlantic County, New Jersey 08215 ("Egg Harbor City NAPA"), and 301 South White Horse Pike, Hammonton, Atlantic County, New Jersey 08037 ("Hammonton NAPA"), respectively. Val-U Auto Parts LLC also maintains a warehouse facility located at 211 Cincinnati Avenue, Egg Harbor City, Atlantic County, New Jersey 08215 (the "211 Warehouse").

5.      Defendant James Scheuermann Sr. ("Scheuermann Sr."), during all relevant times hereinafter mentioned, is a co-franchisee owner and operator of the NAPA stores located at 1613

White Horse Pike, Egg Harbor City, Atlantic County, New Jersey 08215 and 301 South White Horse Pike, Hammonton, Atlantic County, New Jersey 08037, respectively.

6.     Defendant James Scheuermann Jr. ("Scheuermann Jr."), during all relevant times hereinafter mentioned, is a co-franchisee owner and operator, as well as general manager of the NAPA stores located at 1613 White Horse Pike, Egg Harbor City, Atlantic County, New Jersey 08215 and 301 South White Horse Pike, Hammonton, Atlantic County, New Jersey 08037, respectively.

## FACTS

### Background

7.     Plaintiff was employed to work in the showroom of the Egg Harbor City, New Jersey NAPA Auto Parts store located at 1613 White Horse Pike, Egg Harbor City, Atlantic County, New Jersey 08215 from on or about October 30, 2013 until July 10, 2017.

8.     During her employment at the Egg Harbor City NAPA, Plaintiff was supervised by Scheuermann Sr., Scheuermann Jr., and Bethany Scheuermann, James Scheuermann Jr.'s wife.

9.     Plaintiff's primary job responsibilities included stocking shelves, changing price labels, and performing other various tasks as assigned by her supervisors.

### Ms. Metz Was Exposed to a Hostile Work Environment and Persistent Sexual Harassment

10.     Upon information and belief, the Egg Harbor City NAPA Auto Parts store maintains no formal sexual harassment policy and/or training.

11.     In the course of performing the duties of her position, Plaintiff was sexually harassed and forced to endure a hostile work environment, which was severe, pervasive and altered her working conditions. Defendants established and perpetuated this hostile work environment on the basis of Plaintiff's gender.

12.    The types of harassment that Plaintiff was forced to endure included, among other things, unsolicited sexual comments, inappropriate and unwarranted touching, and crude and offensive behavior.

13.    The majority of Plaintiff's unjustified and unlawful harassment was perpetrated by Scheuermann Sr., owner and operator of the Egg Harbor City NAPA location where Plaintiff was employed.

14.    Throughout Ms. Metz's employment at the Egg Harbor City NAPA, Scheuermann Sr. made continuous and unwarranted comments about Plaintiff's appearance and weight, which included, but were not limited to the following:

   a.    in approximately August 2014, Scheuermann Sr., insinuating that Ms. Metz looked fat, asked her if she was pregnant;

   b.    in approximately May 2016, Scheuermann Sr., in the presence of another employee, Rick, commented that Ms. Metz was gaining weight and that she needed to "do something about it";

   c.    in approximately June 2017, in the presence of NAPA employees Rich Brown, Mike Stillo, and Ronald Poule, Scheuermann Sr. made yet another unsolicited comment regarding Ms. Metz's appearance, commenting that "giraffes had better legs" than Plaintiff.

15.    Scheuermann Sr.'s unsolicited comments toward Ms. Metz caused her extreme anxiety and unrest. Plaintiff began to question her self-worth and eventually developed an eating disorder, for which she is currently being treated.

16.    Defendants' inappropriate remarks were not unique Plaintiff, as Ms. Metz frequently overheard Scheuermann Sr. make vulgar and offensive comments about female

customers' breasts.

17.     Additionally, Scheuermann Sr.'s behavior was witnessed and tolerated by fellow NAPA employees, as well as, NAPA supervisors.

18.     After complaining to two female Egg Harbor City NAPA employees, Carol Stewart and Barb Jones, about the harassing nature of Scheuermann Sr.'s behavior, Carol, the office manager, replied that Scheuermann Sr. was a "pervert," but that she did not want to speak up for fear of losing her job.

19.     In fact, Carol, on multiple occasions, remarked that Scheuermann Sr. made the same kind of insulting comments toward her daughter, while her daughter was employed at the Egg Harbor City NAPA. For instance, when Carol's daughter became pregnant, Scheuermann Sr. would make comments about how big her breasts were getting.

20.     In approximately August 2017, Heather, a former Egg Harbor City NAPA employee, informed Plaintiff that she too had been the unwelcome recipient of Scheuermann Sr.'s inappropriate touching and sexually charged remarks.

21.     In addition to unsolicited and offensive comments, NAPA's hostile work environment was perpetuated by Defendants' overt actions and/or failure to act.

22.     In approximately March 2014, a customer came into the store and made the following sexually charged comment to Plaintiff, "you're so pretty, you look good enough to molest." Plaintiff immediately reported this incident to Scheuermann Jr., however, Scheuermann Jr. failed to take action, as the customer continued to make inappropriate comments to Plaintiff while frequenting store.

23.     At an unspecified time and date in 2014, a customer complained to Plaintiff about the inappropriateness of the Howard Stern radio program which was discussing "blow jobs." After

relaying the customer's concern about the lewdness of the program to Scheuermann Sr., and asking him to turn the program off, Scheuermann Sr., who routinely played the radio program, rejected the concern and simply turned the volume down.

24.     In approximately May 2014, Plaintiff was required to visit the 211 Warehouse in order to perform duties associated with her employment. The 211 Warehouse, which is owned and operated by Defendants, displays a poster of topless women in an area that is readily visible to all employees. The poster is inappropriate, degrading, and humiliating towards Plaintiff and other female employees.

25.     Upon information and belief, Defendants also distribute Playboy calendars each year to a select group of customers.

26.     On or about August 4, 2014, while walking past Scheuermann Sr.'s desk, Plaintiff witnessed Scheuermann Sr. looking at pictures of naked women.

27.     In approximately 2015, Scheuermann Sr. approached Ms. Metz while she was up on a ladder restocking goods. Scheuermann Sr. then proceeded to grab Ms. Metz's hips and comment that he was the "safety officer," at which point Ms. Metz quickly informed Scheuermann Sr. that she did not need assistance.

28.     On or about May 24, 2015, Scheuermann Sr. grabbed the drawstring of Plaintiff's shorts in a manner which led Plaintiff to believe that he was attempting to pull them down.  When Plaintiff advised Scheuermann Sr. about the inappropriate nature of his conduct, Scheuermann Sr. merely laughed.

29.     On or about October 5, 2015, Scheuermann Sr. asked Ms. Metz to hang an abstract picture in the restroom facility. Unaware that the picture represented a woman's vagina, Plaintiff did as she was instructed. Ms. Metz was appalled to find out the true nature of the picture, and

although the picture was soon thereafter removed, it was inappropriate for Scheuermann Sr. to request Ms. Metz to perform such a degrading task.

30.    Upon information and belief, the Egg Harbor City NAPA store maintains no separate bathroom facility for female employees.

31.    Moreover, the unisex bathroom at the Egg Harbor City NAPA location has a faulty lock and an exposed window, which does not allow for any privacy.

32.    On or about July 15, 2016, while using the unisex bathroom, Ms. Metz, upon information and belief, caught Scheuermann Sr. peeping at her through the exposed bathroom window.

33.    The aforementioned incident, as well as, the general use of the publicly exposed bathroom facility made Plaintiff extremely anxious to use the bathroom for fear of being watched. As a result, Plaintiff used the bathroom less frequently and began experiencing reoccurring urinary tract infections.

34.    In approximately July 2016, Carol Stewart informed Plaintiff that she had a hole in her pants. Upon hearing the comment, Scheuermann Sr. immediately lifted up the back of Plaintiff's shirt and said "let me see." Carol admonished Scheuermann Sr., at which point he returned to his office. Humiliated, Plaintiff clocked out of work in order to go home and change. Although Plaintiff soon returned to work, she was so upset from the prior incident that she became physically ill and vomited, and continued to remain extremely anxious throughout the remainder of the work day.

35.    On or about December 15, 2016, Scheuermann Sr. grabbed Ms. Metz's inner thigh while reenacting an earlier incident to NAPA employees Chuck Cusack and John Mastro, in which Scheuermann Sr.'s toddler-aged grandson accidentally grabbed Ms. Metz, thinking she was his

mother. After composing herself, Ms. Metz later recounted the entire incident to her co-worker, Carol Stewart.  This incident left Plaintiff feeling both violated and victimized.

36.     On or about March 2, 2017, due to the repeated humiliations that Plaintiff was forced to endure, she experienced a stress-induced panic attack while at work. On or about this time, Plaintiff believed that other NAPA employees at the Egg Harbor City location, Roberta and Cheryl, became aware that she had become increasingly anxious and depressed, conditions for which she is currently being treated.

37.     In approximately June 2017, Plaintiff felt physically threatened when Scheuermann Sr. blocked the only exit to the outdoor work shed in which she was alone working. Although Ms. Metz quickly made up an excuse to leave the scene, she was so physical shaken that, after composing herself, she promptly sought refuge in the showroom in order to be amongst other co-workers and/or customers.

38.     On or about June 24, 2017, Scheuermann Sr. stopped to stare at Plaintiff while she was bending over to perform her job duties. Scheuermann Sr. then proceeded to make sexual gestures with his hands and hips in Ms. Metz's direction. This incident was observed by a co-worker, John Mastro, who informed Plaintiff of Scheuermann Sr.'s actions.

39.     At one point during the week ending June 26, 2017 unknown person(s) drew pictures of male genitalia on Plaintiff's cigarette pack and lighter. When Plaintiff reported this incident to her supervisor, Bethany Scheuermann, Ms. Scheuermann simply laughed, thereby, condoning the lewd behavior and further fostering NAPA's hostile environment.

40.     In addition to being subjected to unwarranted sexual harassment while employed at the Egg Harbor City NAPA, Plaintiff was also forced to endure a hostile and aggressive workplace. Such examples of NAPA's hostile environment include, but are not limited to the

following:

    a.   on or about June 2, 2013, Scheuermann Sr. called Plaintiff a "lowlife" in front of other employees because she had accidentally broken an LED light the previous day;

    b.   on or about August 18, 2016, Scheuermann Sr. reprimanded Plaintiff and fellow employees by stating, "If you're gonna [sic] stand the fuck around, clock the fuck out";

    c.   on or about April 6, 2017, Plaintiff was called a "dumbass" in a note written by a manager of the Hammonton NAPA store. Plaintiff immediately reported the incident to her supervisor, Bethany Scheuermann, who assured her that corrective action would be taken, however, no such action was ever taken.

41.    The sexually charged and/or offensive comments, acts, and vandalism directed towards Ms. Metz clearly constitute conduct that had the effect of unreasonably interfering with her work performance, as well as conduct that created an intimidating, hostile and offensive work environment.

42.    The repetition of these acts and the unsolicited comments directed at Ms. Metz created extreme anxiety and fear in both the work environment and at home.

**Defendants' Failure to Reasonable Accommodate Ms. Metz**

43.    In the course of performing the duties of her position, Plaintiff was forced to endure a hostile work environment, which was severe, pervasive and altered her working conditions. Defendants established and perpetuated this hostile work environment on the basis of Plaintiff's documented disability.

44.    On or about April 7, 2017, Plaintiff injured her shoulder while stocking shelves at

the Egg Harbor City NAPA, a primary responsibility of her employment.

45.     As a result of the incident, Plaintiff aggravated a previous injury, which was also sustained while working at the Egg Harbor City NAPA.

46.     Soon thereafter, Plaintiff filed a worker's compensation claim for the injury she sustained on April 7, 2017

47.     Ms. Metz also visited AtlantiCare Urgent Care Center in Egg Harbor Township, New Jersey to seek immediate medical attention for her injury.

48.     During Plaintiff's medical evaluation, the worker's compensation physician gave Ms. Metz a list of physical restrictions for which she was to adhere. The list included not reaching overhead and not lifting more than ten pounds.

49.     On or about April 10, 2017, Ms. Metz returned to work as scheduled. When she arrived at work, Ms. Metz physically showed Bethany Scheuermann the list of restrictions that she had received from the worker's compensation physician and verbally informed her of the restrictions.

50.     Upon information and belief, the Egg Harbor City NAPA also received a copy of Ms. Metz's physical restrictions via fax.

51.     Nonetheless, Ms. Metz's supervisors failed to provide her with reasonable accommodations by continuing to ask her to perform job duties that exceeded the restrictions that were placed on her by her physician.

52.     In approximately June 2017, Plaintiff attended an occupational therapy appointment, wherein Plaintiff informed the occupational health employee that she had been exceeding her physical restrictions because her supervisor, Bethany Scheuermann, had been asking her to perform duties outside the scope of her limitations, even though Ms. Scheuermann was

aware of these restrictions.

53.    As a result of Plaintiff's conversation with the occupational health employee, Plaintiff was instructed to contact worker's compensation, which she promptly did.

54.    On or about June 9, 2017, Scheuermann Jr. participated in a telephone conversation with both Ms. Metz and her worker's compensation representative wherein Plaintiff's representative reminded Scheuermann Jr. of the restrictions placed on Ms. Metz.

55.    During the aforementioned June 9, 2017 telephone call, Scheuermann Jr. acknowledged the restrictions placed on Plaintiff and affirmed that he would remind his wife, Bethany Scheuermann, about the restrictions which Ms. Metz was not to exceed.

56.    In the days following the June 9, 2017 phone conversation, Plaintiff's restrictions were "partially enforced," because now Plaintiff would speak up if she was asked to perform duties that exceeded her physical limitations, such as lift heavy objects.

57.    Despite speaking up for her rights, Plaintiff felt targeted by comments made by her supervisor, Bethany Scheuermann, such as "everybody has to chip in," which suggested that, because of her restrictions, Plaintiff was not doing her job.

58.    On or about July 5, 2017, Plaintiff was cleared to go back to full work duty.

59.    Subsequently, on July 6, 2017, Plaintiff went back to her normal work routine, which included lifting objects more than ten pounds and lifting objects overhead.

**NAPA Retaliates Against Ms. Metz And Terminates Her Employment**

60.    On or about July 7, 2017, Plaintiff went outside to close all of the work sheds in the yard because it was raining, a task she routinely performed as part of her employment.

61.    Soon thereafter, Bethany Scheuermann again remarked that Plaintiff was not "doing her job," at which point Ms. Scheuermann instructed Ms. Metz to clock out and go home.

62.     This was the second baseless comment by Defendant that Ms. Metz was not fulfilling her job duties, the first coming one month prior when she was on physical restrictions for her shoulder injury.

63.     Plaintiff clocked out and left work as instructed, with full anticipation that she would return to work on Monday morning, July 10, 2017, as scheduled.

64.     On or about July 10, 2017, Plaintiff returned to work, however, she was unable to clock into the computer system, at which point she immediately called Scheuermann Jr. for assistance.

65.     During their telephone conversation, Scheuermann Jr. informed Ms. Metz that it was his belief that she had voluntarily quit her position on Friday, July 7, 2017.  Plaintiff informed Scheuermann Jr. that she had not voluntarily quit, but rather that she was instructed by his wife, Bethany Scheuermann, to clock out and to go home. Plaintiff tried to further explain the exchange that occurred between she and his wife in his absence, however, Scheuermann Jr. informed Ms. Metz that he could not speak with her at the moment and refused to inform her whether or not she had been fired.  Plaintiff continued to ask Scheuermann Jr. whether or not she had been fired, at which point Scheuermann Jr. finally replied "yes, now you're fired for insubordination."

66.     Despite being fired for "insubordination," Plaintiff had never once been previously written up or verbally warned for being insubordinate. In fact, Plaintiff received two raises during the course of her employment at the Egg Harbor City NAPA.

67.     It is clear that Bethany's Scheuermann comment that Ms. Metz was not "doing her job" did not refer to the events that transpired on July 7, 2017, but instead referred to the previous months wherein Plaintiff was on physical restrictions due to the injury she sustained at work on April 7, 2017.

68.      It is also clear that Plaintiff's termination, which occurred one day after she was cleared to go back to full-duty, was not a result of her "insubordination," but rather a result of Defendants' retaliatory efforts to punish Ms. Metz for filing a worker's compensation claim and for complaining to other employees about the pervasive and severe hostile work environment that she was forced to endure.

69.      Defendants' retaliatory motives are further evidenced by the findings of the New Jersey Department of Labor Appeals Tribunal, which found that Ms. Metz was entitled to receive unemployment benefits because, pursuant to N.J.S.A. 43:21-5(b), she was not discharged from the Egg Harbor City NAPA store for misconduct connected with work.

## EEOC AUTHORIZATION TO FILE

70.      On July 21, 2017, the Equal Employment Opportunity Commission ("EEOC") acknowledged receipt of Plaintiff's charge of gender discrimination, disability discrimination, and retaliation against Defendants.  In the event the matter could not be resolved by the EEOC, Plaintiff requested a Notice of Right to Sue.

71.      The EEOC issued Plaintiff a Notice of Right to Sue, dated November 15, 2017.

72.      Plaintiff brings this Complaint within 90 days of the receipt of the Notice of Right to Sue.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF TITLE VII - SEX DISCRIMINATION
(Brought against all Defendants)

73.      Plaintiff repeats and realleges by reference each and every allegation contained in the above stated paragraphs, and incorporates the same herein as though fully set forth.

74.      In violation of Title VII, 42 U.S.C. §§ 2000e *et seq.*, Defendants discriminated against Plaintiff on the basis of sex by subjecting her to a hostile work environment that was severe

and pervasive enough to affect the terms and conditions of her employment.

75.     Defendants' discrimination against Plaintiff was committed with reckless and callous disregard of her Title VII right to a workplace free from discrimination based on sex.

76.     As a result of the Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## COUNT II
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT – DISABILITY DISCRIMINATION
(Brought against all Defendants)

77.     Plaintiff repeats and realleges by reference each and every allegation contained in the above stated paragraphs, and incorporates the same herein as though fully set forth.

78.     By and through their course of conduct, Defendants willfully violated the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.,* by subjecting Plaintiff to disparate treatment and a hostile work environment based on her physical disability.

79.     Defendants' discrimination against Plaintiff was committed with reckless and callous disregard of her right to a workplace free from discrimination based on her disability.

80.     As a result of the Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## COUNT III
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT – UNLAWFUL RETALIATION
(Brought against all Defendants)

81.     Plaintiff repeats and realleges by reference each and every allegation contained in the above stated paragraphs, and incorporates the same herein as though fully set forth.

82.     By and through their course of conduct, Defendants willfully violated the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.,* by retaliating against Plaintiff and for treating Plaintiff in a hostile, discriminatory or altered manner in reprisal for Plaintiff's legally protected complaints.

83.     Plaintiff was impermissibly retaliated against because she filed a claim for workers compensation and sought accommodations for her disability.

84.     Plaintiff was impermissibly retaliated against because she made complaints of workplace discrimination, including complaints about being forced to perform duties outside of her physical restrictions.

85.     As a direct and proximate result of the Defendants' retaliatory conduct, Plaintiff was caused to suffer loss of employment, monetary damages, great emotional distress, suffering and humiliation, and mental distress and anguish.

86.     As a result of the Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

### COUNT IV
### VIOLATION OF NJLAD - N.J.S.A. 10:5-1 *et seq.* –
### SEX DISCRIMINATION
(Brought against all Defendants)

87.     Plaintiff repeats and realleges by reference each and every allegation contained in the above stated paragraphs, and incorporates the same herein as though fully set forth.

88.     By and through their course of conduct, Defendants willfully violated the New Jersey Law Against Discrimination by subjecting Plaintiff to disparate treatment and a hostile work environment based on her gender.

89.     Plaintiff was impermissibly treated differently from others because she was a

female and such conduct did constitute and unlawful employment practice under the NJLAD.

90.     As a direct and proximate result of the Defendants' discriminatory conduct, Plaintiff was caused to suffer loss of employment, monetary damages, great emotional distress, suffering and humiliation, and mental distress and anguish.

91.     As a result of the Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## COUNT V
## VIOLATION OF NJLAD - N.J.S.A. 10:5-1 *et seq.* –
## DISABILITY DISCRIMINATION
(Brought against all Defendants)

92.     Plaintiff repeats and realleges by reference each and every allegation contained in the above stated paragraphs, and incorporates the same herein as though fully set forth.

93.     By and through their course of conduct, Defendants willfully violated the New Jersey Law Against Discrimination by subjecting Plaintiff to disparate treatment and a hostile work environment based on her physical handicap.

94.     Plaintiff was impermissibly treated differently from others because of her physical disabilities and such conduct did constitute and unlawful employment practice under the NJLAD.

95.     As a direct and proximate result of the Defendants' discriminatory conduct, Plaintiff was caused to suffer loss of employment, monetary damages, great emotional distress, suffering and humiliation, and mental distress and anguish.

96.     As a result of the Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## COUNT VI
## <u>VIOLATION OF NJLAD - N.J.S.A. 10:5-1 *et seq*. –</u>
## <u>UNLAWFUL RETALIATION</u>
(Brought against all Defendants)

97.     Plaintiff repeats and re-allege by reference each and every allegation contained in the above stated paragraphs, and incorporate the same herein as though fully set forth.

98.     By and through their course of conduct, Defendants willfully violated the New Jersey Law Against Discrimination by retaliating against Plaintiff and for treating Plaintiff in a hostile, discriminatory or altered manner in reprisal for Plaintiff's legally protected complaints.

99.     Plaintiff was impermissibly retaliated against because she filed a claim for workers compensation and sought accommodations for her disability.

100.    Plaintiff was impermissibly retaliated against for complaining of workplace discrimination, including complaints of sexual harassment, inappropriate sexually-charged comments and touching, and being forced to perform duties outside of her physical restrictions.

101.    Defendants' actions in terminating Plaintiff's employment and failing to accommodate Plaintiff as alleged herein constitutes a reprisal prohibited under the New Jersey Law Against Discrimination.

102.    Defendants participated in, condoned, ratified, perpetuated, conspired, incited, coerced, induced and/or aided and abetted the NJLAD violations.

103.    As a direct and proximate result of the Defendants' retaliatory conduct, Plaintiff was caused to suffer loss of employment, monetary damages, great emotional distress, suffering and humiliation, and mental distress and anguish.

104.    As a result of the Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants.

## JURY DEMAND

Pursuant to F.R.C.P. 38(b), Plaintiff hereby demands a trial by jury on all of the triable issues stated herein.


Dated: February 9, 2018

                              Respectfully submitted,

                              **HACH ROSE SCHIRRIPA & CHEVERIE LLP**

                              By:      */s/ Frank R. Schirripa*
                                       Frank R. Schirripa
                                       John A. Blyth
                                       112 Madison Avenue, 10th Floor
                                       New York, New York 10016
                                       Telephone: (212) 213-8311
                                       Facsimile: (212) 779-0028

                                       *Counsel for Plaintiff*